**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-22-0000688**
**29-MAY-2025**
**07:57 AM**
**Dkt. 120 MO**

NOS. CAAP-22-0000688 and CAAP-23-0000292

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

**CAAP-22-0000688**
STATE OF HAWAI'I, Plaintiff-Appellee,
v.
CHANI SMITH, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-20-0000557)

and

**CAAP-23-0000292**
STATE OF HAWAI'I, Plaintiff-Appellant,
v.
CHANI SMITH, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-22-0000657)

**MEMORANDUM OPINION**
(By: Hiraoka, Presiding Judge, McCullen and Guidry, JJ.)

In CAAP-22-0000688, Defendant-Appellant Chani Smith

(**Smith**) appeals from the August 29, 2022 "Findings of Fact

[(**FOFs**)], Conclusions of Law [(**COLs**)], and Order Granting

[Smith's] Motion to Dismiss for Violation of [Hawai'i Rules of

Penal Procedure (**HRPP**)] Rule 48 Without Prejudice & Denying [Smith's] Motion to Dismiss for Violation of Constitutional Speedy Trial Right" (**2022 Order**), filed by the Circuit Court of the Second Circuit (**circuit court**) in Case No. 2CPC-20-0000557.

In CAAP-23-0000292, which this court has consolidated with CAAP-22-0000688, Plaintiff-Appellant State of Hawaiʻi (**State**) appeals from the February 16, 2023 "[FOFs], [COLs], and Order Granting [Smith's] Motion for Order to Show Cause and Dismissal with Prejudice" (**2023 Order**), filed by the circuit court in Case No. 2CPC-22-0000657.[1]

## I.   Background[2]

On July 30, 2017, the complaining witness (**CW**) reported to the Maui Police Department (**MPD**) that she had been sexually assaulted earlier that day.  MPD initiated a police investigation, the CW submitted to a sexual assault examination by a medical professional, and a Hawaii Sexual Assault Evidence Collection Kit was submitted as evidence in the case.  The CW gave a recorded statement to an MPD Officer (**Officer**), in the Officer's patrol car at the Maui Memorial Hospital parking lot.  The Officer wrote an incident report and submitted his digital recording as evidence in the case.  Smith's defense counsel

---

[1]    The Honorable Peter T. Cahill presided in both underlying cases.

[2]    The background facts set forth herein are taken from the circuit court's FOFs in the 2022 Order and 2023 Order, and are uncontested by the parties.

received a copy of this recorded interview in the ordinary discovery process.

The CW was separately interviewed on July 30, 2017 by an MPD Detective (**Detective**). The Detective's report represented that the Detective's interview of the CW was also conducted at the Maui Memorial Hospital parking lot. No recording of the Detective's interview of the CW was submitted into evidence, and there is no indication that the interview was recorded.

On August 1, 2017, the Detective interviewed a witness to the alleged sexual assault, Amy Schooping (**Schooping**). The Detective prepared a written report with a detailed summary of the interview. Schooping's interview was recorded; however, a copy of the Schooping recording was not submitted into evidence at the time. The recording was later recovered by MPD.

On August 4, 2017, the Detective conducted a telephone interview with another witness, Jeffery Johnson (**Johnson**). There is no indication that Johnson's interview was recorded, and the Detective did not submit a recording of Johnson's interview into evidence.

Smith was made aware of the investigation, retained counsel, and submitted to a buccal swab on December 1, 2017. Smith was not arrested at this time. Evidence, including Smith's buccal swab, was submitted to the Sorenson Forensics Lab

for analysis, which submitted its results on January 30, 2018. The test results found no DNA or other evidence.

The evidence was then submitted to the Honolulu Police Department Scientific Investigative Section for additional scientific examination. This testing was completed on April 17, 2019, and also found no DNA or other evidence.

In January 2019, during the pendency of the investigation, Smith moved to California.

On November 2, 2020, the State filed its Indictment in 2CPC-20-0000557 (**2020 Indictment**). The 2020 Indictment charged Smith with two counts of Sexual Assault in the Second Degree, in violation of Hawaii Revised Statutes (**HRS**) § 707-731(1)(a), (b) (2014).

On February 8, 2022, Smith was arrested by California law enforcement on a Hawaiʻi arrest warrant. There is no record that the State attempted to locate Smith prior to his February 2022 arrest. Smith posted bail in California and Hawaiʻi, remained out on bond, and was permitted by the court to continue residing in California.

On April 20, 2022, Smith was arraigned on the charges in 2CPC-20-0000557. Smith filed "[Smith's] Request for Discovery and for Disclosure of All Exculpatory Evidence and Incorporated Statement of Authority" the next day. The State provided discovery materials to Smith in April and May of 2022,

which included written summaries of the statements made by Schooping and Johnson.

On June 9, 2022, Smith filed his "Motion to Dismiss for Violation of [HRPP Rule 48] and for Violation of the Sixth Amendment Right to a Speedy Trial" (**Motion to Dismiss**).  The circuit court heard Smith's Motion to Dismiss in June and August 2022.  After the June 2022 hearing, the State hand-delivered to defense counsel the recorded statement of the CW, which had been submitted as evidence by the MPD Officer who took the statement, and two other disks containing discovery material.

On August 29, 2022, the circuit court entered its 2022 Order, which granted Smith's Motion to Dismiss without prejudice for violation of HRPP Rule 48, and denied Smith's Motion to Dismiss for violation of the constitutional right to a speedy trial.  The circuit court gave the State a deadline of September 9, 2022 to re-indict Smith.

Smith timely appealed the 2022 Order.  Smith's appeal of the 2022 Order was docketed as CAAP-22-0000688.  On appeal, Smith alleges that the circuit court erred in not dismissing the case with prejudice after finding a violation of HRPP Rule 48, and in concluding that his constitutional right to a speedy trial was not violated.

On September 9, 2022, the State filed a new Indictment in 2CPC-22-0000657 (**2022 Indictment**).  The 2022 Indictment re-

charged Smith with the same two counts of Sexual Assault in the Second Degree.

On September 27, 2022, Smith filed a Motion to Compel Discovery requesting, inter alia, that the recorded statements of Schooping and Johnson be turned over to defense counsel. The circuit court granted Smith's Motion to Compel Discovery in part. As to the requested recordings, the circuit court adopted the deputy prosecuting attorney's (**DPA**) representation that there were no recorded statements of Schooping and Johnson that were turned into evidence. The circuit court left open the possibility of revisiting the issue if any recordings were located. The circuit court ordered the State to provide the investigative notes related to Schooping and Johnson's statements to the defense by October 28, 2022, and, if no such notes existed, that the State notify the defense of this. The circuit court further ordered that, except for the discovery issue, the proceedings in 2CPC-22-0000657 would be stayed pending the outcome of Smith's appeal from the 2022 Order in CAAP-22-0000688.

On the October 28, 2022 discovery deadline, the State communicated with the defense that the Detective who interviewed Schooping and Johnson was on extended medical leave and not responding to his supervisor's inquiries. The State

communicated that it could not provide any information as to whether any interview notes still exist or ever existed.

On November 1, 2022, Smith filed a Motion for Order to Show Cause as to why the State should not be held in contempt for its noncompliance with the circuit court's order to turn over notes of Schooping and Johnson's interviews. Smith asked the circuit court to hold the State in contempt and impose the sanction of dismissal of the case with prejudice.

On November 3, 2022, the State communicated to the defense that on November 2, 2022, the Detective's supervisor had spoken with the Detective, who was on medical leave, and that the Detective had informed the supervisor that the Detective does not retain notes after completing reports. The State further communicated to the defense that the State was able to locate an audio and visual recording of Schooping's August 1, 2017 statement with the assistance of a second MPD detective. The recording was located on an MPD computer hard drive, and the recording was provided to defense counsel on November 18, 2022.

In January 2023, the circuit court heard argument on the Motion for Order to Show Cause, and whether dismissal with prejudice was the proper sanction for the State's discovery violation. At the hearing, the circuit court expressed concern regarding the State's noncompliance with its discovery order:

> This is a five-year-old case. It went through a dismissal once. We're back again. I issued an order and

said, do this. And [defense counsel] is absolutely correct. I don't blame the [DPA]. You can only turn over what you got.

But this idea that they go through and -- I'm like flabbergasted. I truly am. **Five years and** they know -- it's a sex assault case. [Defense counsel] described it, common vernacular is a -- it's a rape case, and **they're only finding things now?** I've got to tell you, that's just not acceptable. That's just -- **that just is not acceptable. That's hiding the ball. Whether it's intentional or negligent, unintentional, just a mistake, it's hiding the ball.** And if -- there's got to be a consequence to that.

**And this idea is, well, I exclude the witness. But he may be helpful to the defense.** You're just assuming that it's not going to -- now all of a sudden this other critical witness, who's an eyewitness to something, is -- comes out of the woodwork, but not really out of the woodwork because the State always had the evidence in its possession. That's evidence. You can call it whatever you want, but that's evidence in this case. And they only find it now?

. . . .

. . . It's five years this [CW] has been dragged through this process, and now we're going at it again when someone says, well, we have this -- now all of a sudden this secret archive -- this is like the Vatican, for God's sakes. The secret archive has been discovered, and now we know that the police department has a secret archive where things are somewhere -- stored sometimes.

Well, who had access -- I mean, look, . . . [the second MPD detective] has testified more times in this courtroom than anybody else that I can think of. And, you know, I've got to tell you, he carries a lot of weight and credibility around here. And he went to the extra effort, but **we've got the investigating officer who can't remember things, doesn't take notes. Okay. Well, if that's the way he wants to conduct his investigations, there's an impact when he gets on the witness stand over the quality of the -- of the investigation.**

. . . .

. . . I . . . find that the [MPD] did not turn over critical evidence that it had in its possession.** Thanks to the exceptional work of . . . [the second MPD detective], with his 25 years of experience, he actually found something.

But at some point, there needs to be a consequence to the action because just not -- and it doesn't really make any difference whether it's exculpatory or not. **Defendant**

> **needs to prepare. This is a very hotly contested case, and now all of a sudden there's an eyewitness who shows up only after the first matter is dismissed, after years went by where there was no indictment brought forth.** I -- there just needs to be a consequence.

(Emphasis added.)

On February 16, 2023, the circuit court entered its 2023 Order dismissing the 2022 Indictment with prejudice. The State appealed the 2023 Order, and this appeal was docketed as CAAP-23-0000292. The State raises a single point of error on appeal, contending that the circuit court abused its discretion by dismissing the charges against Smith with prejudice.

This court consolidated Smith's appeal in CAAP-22-0000688 with the State's appeal in CAAP-23-0000292. We address the points of error raised in both appeals as follows.

## II. Discussion

We review the circuit court's ruling on a motion to dismiss an indictment for abuse of discretion. State v. Thompson, 150 Hawaiʻi 262, 266, 500 P.3d 447, 451 (2021). "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." Id. (citations omitted).

We review questions of constitutional law under the right/wrong standard. State v. Visintin, 143 Hawaiʻi 143, 152, 426 P.3d 367, 376 (2018) (citations omitted).

### A. 2CPC-20-0000557

Smith contends that the circuit court erred in dismissing the charges brought against Smith in 2CPC-20-0000557 *without* prejudice. Smith raises two principle points of error in this regard, contending that the circuit court erred in: (1) its application of the three factors adopted in State v. Estencion, 63 Haw. 264, 625 P.2d 1040 (1981), to determine whether to dismiss a case with or without prejudice for violation of HRPP Rule 48(b); and (2) "not dismissing the charges against . . . Smith for the violation of his constitutional rights" to a speedy trial guaranteed under the United States Constitution and in article I, section 14 of the Constitution of the State of Hawaiʻi. We address these points in turn.

### 1. HRPP Rule 48

"The purpose of [HRPP] Rule 48 is to ensure an accused a speedy trial, which is separate and distinct from his constitutional protection to a speedy trial." Estencion, 63 Haw. at 268, 625 P.2d at 1043 (footnote omitted). In Estencion, the Hawaiʻi Supreme Court adopted the following test to guide a trial court's exercise of discretion in dismissing charges with or without prejudice for a HRPP Rule 48 violation:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and the circumstances of the case which led to the

10

dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

Id. at 269, 625 P.2d at 1044 (quoting Federal Speedy Trial Act, 18 U.S.C.A. § 3162(a)(1) (West 1969 & Supp. 1980)).

The circuit court, applying the Estencion factors to this case, concluded:

> 8. The seriousness of the offense in the instant case weighs heavily in favor of the State and a dismissal **without prejudice**.
>
> 9. The circumstance that led to the dismissal here is the [State's] failure to make any effort to locate [Smith], irrespective of the fact that he was residing in California, [this] weighs in favor of a dismissal **with prejudice**.
>
> 10. **The fact that this is a very serious charge and** once the matter was brought to the attention of this court, **all parties acted diligently in addressing the issue**, and the State agreed to promptly refile this matter, **strongly favors allowing re-prosecution in the administration of justice**.

(Emphasis added.)

As to the first Estencion factor, the circuit court's assessment of Sexual Assault in the Second Degree as constituting a "serious" offense did not exceed the bounds of reason. As to the second factor, the circuit court acknowledged that the State's "failure to make any effort to locate [Smith], irrespective of the fact that he was residing in California" in fact "weighs in favor of a dismissal *with* prejudice." (Emphasis added.) And, with regard to the third factor, the circuit court did not abuse its discretion in determining that the "administration of justice" favored reprosecution because "this

11

is a very serious charge" and "all parties acted diligently in addressing the issue."

We therefore conclude that the circuit court did not abuse its discretion in applying the Estencion factors, and in dismissing the charges brought against Smith in 2CPC-20-0000557 without prejudice on that basis.

## 2. Constitutional Right to a Speedy Trial

Both the Sixth Amendment to the United States Constitution and article I, section 14 of the Hawai‘i Constitution guarantee a defendant in a criminal case the right to a speedy trial in all prosecutions. State v. Lau, 78 Hawai‘i 54, 62, 890 P.2d 291, 299 (1995). Courts consider the four factors articulated in Barker v. Wingo, 407 U.S. 514 (1972) in determining whether a defendant's constitutionally protected right to a speedy trial has been violated. Those four factors are: "(1) length of the delay; (2) reasons for the delay; (3) defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant." Lau, 78 Hawai‘i at 62, 890 P.2d at 299 (citing Barker, 407 U.S. at 530).

None of the four Barker factors "is to be regarded as either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial." Id. (cleaned up). The factors are related "and must be considered together with such circumstances as may be relevant." Id. (cleaned up).

12

"When a defendant's right to a speedy trial has been violated, the only remedy is dismissal with prejudice." Visintin, 143 Hawaiʻi at 157, 426 P.3d at 381 (citation omitted).

In applying the Barker factors, the circuit court concluded:

> 14. The length of the delay favors [Smith's] assertion of a Speedy Trial violation.
>
> 15. Although [Smith] was residing out of state, the overall responsibility for the delay in this case was the State's failure to look for [Smith]. This factor favors [Smith].
>
> 16. **[Smith] did not assert his right [to] a Speedy Trial until this Motion [to Dismiss] was filed. This factor favors the State**.
>
> 17. The most decisive factor when evaluating a possible violation of Speedy Trial is the prejudice to the Defendant. When evaluating prejudice, there are three factors to consider: to prevent oppressive pre-trial incarceration; to minimize anxiety and concern of the accused; and to limit the possibility that the defense will be impaired. State v. Almeida, 54 Haw. 443, 448, 509 P.2d 549, 552 (1973); citing, Barker . . . . This factor favor[]s the State.
>
> 18. [Smith] has not suffered any oppressive pre-trial incarceration. Arguably there was anxiety of the accused, however, that exists in any criminal case, therefore this case does not stand out. There is nothing to support that the defense has been impaired at this juncture.

(Emphasis added.)

Here, the circuit court's conclusions that the first two Barker factors weigh in Smith's favor are unchallenged. At issue, therefore, is whether the circuit court erred in concluding that the third and fourth factors weigh in favor of the State and, if so, whether the circuit court was wrong in concluding that Smith's constitutional rights were not violated.

We review these questions de novo.  See Visintin, 143 Hawaiʻi at 152, 426 P.3d at 376 (citations omitted).

The circuit court concluded that the third Barker factor weighed in favor of the State because Smith "did not assert his right [to] a Speedy Trial until this Motion [to Dismiss] was filed."  This cursory conclusion implies that Smith failed to timely "assert his right" to a speedy trial because he did not move to dismiss his charges until June 2022.  This does not accurately reflect the record.

The record reflects that the alleged offense occurred on July 30, 2017, the 2020 Indictment charging Smith was filed on November 2, 2020, and Smith was arrested in California on February 8, 2022.  The record thus reflects a period of approximately 15 months between the filing of the 2020 Indictment and Smith's arrest.  During this time, it appears that the State did not make efforts to locate and arrest Smith. It further appears that Smith was unaware of the 2020 Indictment and the arrest warrant until he was arrested in February 2022.

The record reflects, moreover, that Smith moved to dismiss the Indictment on June 9, 2022, a mere 50 days – less than 2 months – after his arraignment on April 20, 2022.  See Visintin, 143 Hawaiʻi at 161, 426 P.3d at 385 (finding that defendant "raised the issue of speedy trial as soon as was practicable under the circumstances" where defendant filed a

motion to dismiss on speedy trial grounds within two weeks of his arraignment). On this basis, we determine that the circuit court erred in concluding that Smith did not "assert his right to a Speedy Trial."

With regard to the fourth Barker factor, we determine that the circuit court did not err in concluding, on the record before it, that "[t]here is nothing to support that the defense has been impaired at this juncture." The circuit court *did* err, however, in concluding that "[t]he most decisive factor when evaluating a possible violation of Speedy Trial is the prejudice to the Defendant." Even if the fourth Barker factor weighed in favor of the State, that factor should have been properly balanced with the first three factors that weigh in Smith's favor.

For the foregoing reasons, we vacate the circuit court's Order in Case No. 2CPC-20-0000557. We instruct the circuit court, on remand, to make such FOFs and COLs as necessary to demonstrate its full consideration, and proper balancing, of all four Barker factors.

**B. 2CPC-22-0000657**

The State contends that the circuit court erred in dismissing the charges brought against Smith in 2CPC-22-0000657 *with* prejudice.

15

The following FOFs and COLs set forth the circuit court's basis for dismissing the 2022 Indictment with prejudice:

[FOF] 36. Following the hearing on January 10, 2023, this Court found that although not faulting the [DPA] personally as the Defense had argued, the [MPD's] and by extension the [DPA's] possession of the recording for five years before turning it over was not acceptable.

[FOF] 37. With regard to the belatedly provided recording of [the] Amy Schooping interview, this Court stat[ed]: "whether intentional, negligent, unintentional or just a mistake it's hiding the ball." It doesn't matter whether the evidence is inculpatory of exculpatory. The delay in providing limited the Defense's ability to prepare. The Court added: "I . . . find that the [MPD] did not turn over critical evidence that it had in its possession. . . . [T]here needs to be a consequence to that action."

[FOF] 38. The Court finds that the appropriate remedy for this is a Dismissal with Prejudice because: 1) The State (MPD) had the evidence for over 5 years, knew the importance of this case, and simply failed to turn over evidence that it knew it had without reason or explanation; 2) the Court cannot say that the withholding of this evidence by the police has not prejudiced the [defendant] in both cases regardless of its contents.

. . . .

[COL] 9. [Smith] in this case is entitled to the whole truth-not some surgically constructed or manufactured "truth" that suits only the government's erroneous theory of the case. Brady [v. Maryland, 373 U.S. 83,] 87-88 [(1963)]. Complete and unadulterated disclosures are required to the fullest extent of the mandates of Rule 16, Brady, and its progeny. See[] e.g.[,] United States v. Agurs, 427 U.S. 97, 106 . . . (1976) ("When the prosecutor receives a specific and relevant request, failure to make any response is seldom, if ever, excusable.").

. . . .

[COL] 11. The Court has broad discretion to alleviate discovery violations (HRPP Rule 16(e)(9)(i); State v. David, 134 Hawai'i 289, 297, 339 P.3d[] 1090, 1098 (2014)) and the Court deems the appropriate remedy is a dismissal with prejudice.

[COL] 12. The Court has considered alternative remedies but concludes as a matter of law that failure to provide a simple statement to the defense regardless of its content for 5 years must bear a significant consequence. The claim of MPD of a recent "discovery" of this material

> the Court finds incredulous.  The defense should be
> afforded even innocuous material so a defendant can
> consider all viable options and must not be left to making
> important decisions based on the whim of an investigating
> officer.

(Cleaned up.)

On appeal, the State contends that FOF 38 was clearly erroneous and COL 12 was wrong because the circuit court erred: (1) in finding "that the State failed to provide the [Schooping] recording to Smith for five years"; (2) finding "that Smith suffered prejudice from the delay"; and (3) failing to consider "other less-restrictive remedies than dismissal with prejudice," such as suppression of Schooping's testimony, dismissal without prejudice, and referral of the DPA for disciplinary action.

> A discovery violation can . . . constitute a so-called
> Brady violation, which infringes upon the defendant's due
> process right to a fair trial.  The suppression by the
> [DPA] of evidence favorable to the accused violates due
> process where the evidence is material to guilt or
> punishment, regardless of the good faith or bad faith of
> the [DPA].  However, in order to establish a Brady
> violation, an appellant must make a showing that the
> suppressed evidence would create a reasonable doubt about
> the appellant's guilt that would not otherwise exist.

State v. Fukusaku, 85 Hawai'i 462, 479, 946 P.2d 32, 49 (1997) (cleaned up).

HRPP Rule 16, which governs discovery in criminal cases, directs in relevant part that,

> Upon written request of defense counsel and specific
> designation by defense counsel of material or information
> which would be discoverable if in the possession or control
> of the prosecutor and which is in the possession or control
> of other governmental personnel, **the prosecutor shall use
> diligent good faith efforts to cause such material or
> information to be made available to defense counsel;** and if
> the prosecutor's efforts are unsuccessful the court shall

17

> issue suitable subpoenas or orders to cause such material or information to be made available to defense counsel.

HRPP Rule 16(b)(2) (emphasis added).

The record reflects that the Schooping recording is not part of the record, and there is no indication that the circuit court reviewed the recording prior to dismissing the 2022 Indictment. It is unclear how the circuit court could have determined, without reviewing the recording, that the recording was material to Smith's defense, such that the State's delay in turning over the Schooping recording prejudiced the defense.

Moreover, the circuit court found that, although it was not "faulting the [DPA] personally," "the [MPD's] and by extension the [DPA's] possession of the recording for five years before turning it over was not acceptable." On September 27, 2022, the defense filed a Motion to Compel Discovery requesting that the circuit court compel disclosure of the recorded interview with Schooping. The State located and turned over the recording to the defense on November 18, 2022. It appears that the recording was in MPD's possession, the Detective who made the recording was unavailable due to medical reasons, and a second MPD detective was able to locate a copy of the recording. We determine that the circuit court erred in failing to examine whether, under these circumstances, the DPA in fact used "diligent good faith efforts" to locate and make the recording available to Smith.

We therefore vacate the circuit court's 2023 Order, and instruct the circuit court on remand to make appropriate FOFs and COLs as to whether, under these circumstances, the State violated Brady and/or HRPP Rule 16 by not turning the Schooping recording over to the defense prior to November 18, 2022.

We further instruct the circuit court, should it exercise its authority to impose HRPP Rule 16 sanctions,[3] to make FOFs and COLs that clearly articulate its consideration of whether a less severe sanction than dismissal "would rectify prejudice" to Smith.  In imposing HRPP Rule 16 sanctions,

> The trial court should take into account the reasons why the disclosure was not made, the extent of prejudice, if any, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances. . . . Before the court orders dismissal of a case because of the State's violation of HRPP Rule 16, it must consider whether less severe measures would rectify prejudice caused to the defendant by the violation.

State v. Dowsett, 10 Haw. App. 491, 495, 878 P.2d 739, 742 (App. 1994) (cleaned up).

Finally, if the circuit court determines that dismissal is warranted, it should make sufficient FOFs and COLs

---

[3]      It appears that the circuit court, while determining that the State violated both Brady and HRPP Rule 16, imposed sanctions pursuant to HRPP Rule 16.  HRPP Rule 16(e)(9)(i) provides:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or an order issued pursuant thereto, the court may order such party to permit the discovery, grant a continuance, or it may enter such other order as it deems just under the circumstances.

to clearly articulate its basis for dismissing the case with or without prejudice.

### III. Conclusion

For the foregoing reasons, we vacate the circuit court's 2022 Order in 2CPC-20-0000557, and remand for further proceedings to determine, consistent with this memorandum opinion, whether Smith's constitutional right to a speedy trial was violated.  We further vacate the circuit court's 2023 Order in 2CPC-22-0000657, and remand for further proceedings consistent with this memorandum opinion.  We note that a circuit court finding of a speedy trial violation in 2CPC-20-0000557 would render further proceedings in 2CPC-22-0000657 unnecessary on mootness grounds.

DATED: Honolulu, Hawaiʻi, May 29, 2025.

On the briefs:

Gary A. Modafferi,
for CHANI SMITH.

Gerald K. Enriques,
Deputy Prosecuting Attorney,
County of Maui,
for STATE OF HAWAIʻI.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge